IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADVANCED SEISMIC TECHNOLOGY, INC., *et al.*, Plaintiffs, | § § § § | |
| v. | § | CIVIL ACTION NO. H-16-3041 |
| M/V FORTITUDE, *et al.*, Defendants. | § § § § | |

# **MEMORANDUM AND ORDER**

This Carriage of Goods by Sea Act ("COGSA") case is before the Court on the Motion for Partial Summary Judgment ("Motion") [Doc. # 104] filed by Plaintiffs Advanced Seismic Technology, Inc. ("Advanced Seismic") and Geokinetics International, Inc. ("Geokinetics"). Plaintiffs seek summary judgment that Defendant Pentagon Freight Services, Inc. ("Pentagon") is liable under Clause 3.4 of the Master Services Agreement ("MSA") between the parties, and that Pentagon is liable for Plaintiffs' attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code. Pentagon filed a Response [Doc. # 117], and Plaintiffs filed a Reply [Doc. # 123].

The Court has carefully reviewed the record in this case and the applicable legal authorities. Based on that review, the Court **grants** Plaintiffs' Motion as to

Pentagon's liability under Clause 3.4 of the MSA, and **denies** Plaintiffs' Motion as to attorneys' fees.

I. **BACKGROUND**

In connection with a seismic project in Azerbaijan, Plaintiffs sought to ship seismic equipment from Houston, Texas, to Poti, in the country of Georgia. The shipment included Plaintiffs' GEOTIGER 4, a 60-foot aluminum seismic vessel, disassembled into sections. Pentagon provided freight forwarding services pursuant to the MSA with Advanced Seismic dated March 18, 2015. Clause 3.4 of the MSA provides that Pentagon, as the Contractor, warrants the services of third parties it selects and agrees to be "liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party." *See* MSA [Doc. # 105], ¶ 3.4.

Pentagon issued a booking note (the "Pentagon Booking Note") to Advanced Seismic for the specific shipment at issue in this case. The Pentagon Booking Note provided that the cargo was "to be stowed under deck." *See* Pentagon Booking Note, Exh. A-3 to Response, p. 1.

Pentagon negotiated with Stellar Line Ocean Transport Ltd. ("Stellar Line"), the carrier, to ship Plaintiffs' seismic equipment. On October 15, 2015, Stellar Line and Pentrans, Inc., the non-vessel operating common carrier ("NVOCC") for

Pentagon, entered into a booking note, the "Stellar Line Booking Note." This booking note contained no term specifying that the cargo was to be stowed under deck, but it referenced "additional terms and conditions as per attached [Bill of Lading]."

On November 10, 2015, Geokinetics delivered the cargo to the vessel M/V Fortitude in Houston. At the time the seismic equipment was delivered to the M/V Fortitude, it was already lashed to flat racks. Between November 13 and 18, 2015, the flat racks with Plaintiffs' cargo were loaded onboard the vessel. On November 16, 2015, Pentagon sent drafting instructions for the Bill of Lading to Stellar Line. In the instructions, Pentagon did not specify that the seismic equipment should be stowed below deck. Stellar Line informed Pentagon that the cargo would be stowed on deck and that the bill of lading would so reflect. Pentagon asked to remove that provision so the cargo would be stowed below deck, and Stellar Line said no. The Bill of Lading ultimately issued by Stellar Line (the "Stellar Line Bill of Lading") stated on page 1 that the cargo consisted of 34 packages of seismic equipment "as per attached rider." The attached rider lists the 34 packages and, above the list, contains the notation in all capital letters: "CONTAINERS & FLAT RACKS STOWED ON DECK."

While in transit, the vessel encountered very heavy seas and, on November 26, 2015, the starboard hull section of Advanced Seismic's GEOTIGER 4 fell overboard and was lost.

Plaintiffs seek summary judgment that Pentagon is liable for the lost cargo pursuant to Clause 3.4 of the MSA. Additionally, Plaintiffs seek summary judgment that they are entitled under Texas law to recover their attorneys' fees from Pentagon. The Motion has been fully briefed and is now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Rodgers v. United States*, 843 F.3d 181, 190 (5th Cir. 2016). The interpretation of a maritime contract is a question of law. *Int'l Marine, L.L.C. v. Integrity Fisheries, Inc.*, 860 F.3d 754, 759 (5th Cir. 2017) (citing *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013)).

## III. LIABILITY UNDER CLAUSE 3.4 OF THE MSA

As noted above, Clause 3.4 of the MSA provides that Pentagon, as the Contractor, warrants the services of third parties it selects and agrees to be "liable for

any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party." *See* MSA, ¶ 3.4. It is undisputed that Stellar Line was a third party selected by Pentagon to transport the GEOTIGER 4 from Texas to Georgia. It is also undisputed that the starboard hull section of the GEOTIGER 4 was lost while in Stellar Line's custody. Pentagon presents several arguments against summary judgment that it is liable under Clause 3.4 of the MSA. Specifically, Pentagon argues that Plaintiffs lack standing, that the MSA was superseded by the Pentagon Booking Note, that the Force Majeure clause of the MSA relieves Pentagon of liability for the loss of the hull section, and that Clause 3.4 is unenforceable because Plaintiffs failed to comply with the fair notice requirements for indemnity agreements under Texas law.

### A. Standing

Pentagon argues that neither Plaintiff has standing to pursue the breach of contract claim under Clause 3.4 of the MSA.

***Geokinetics.*** – Pentagon notes that Plaintiff Geokinetics International, Inc. did not sign and is not a party to the MSA, and Plaintiffs do not dispute this assertion.[1]

---

[1] The MSA states that it is between Pentagon and "ADVANCED SEISMIC TECHNOLOGY, INC. . . . ("GEOKINETICS"). *See* MSA, p. 1. Geokinetics is a defined term in the MSA, referring to Advanced Seismic. The legal entity Geokinetics International, Inc., however, is not a party to the MSA.

Additionally, the MSA provides clearly and unequivocally that "Nothing in this Agreement . . . shall be construed to create a right or claim against any Party by any person or entity not a Party to this Agreement and each of the undersigned specifically disavows any other creation of any third party beneficiary status in favor of such person or entity." *See* MSA, ¶ 19.8. Because Geokinetics is neither a party to nor a third-party beneficiary of the MSA, it lacks standing to assert a breach of contract claim based on Clause 3.4 of that contract.

*<u>Advanced Seismic</u>*.– Pentagon argues also that Advanced Seismic, a party to the MSA, lacks standing to pursue the breach of contract claim. To have standing to pursue a lawsuit, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016). Pentagon argues that Advanced Seismic has failed to present evidence that it suffered an injury in fact. Specifically, Pentagon argues that Advanced Seismic has presented no evidence that it has an ownership or other interest in the GEOTIGER 4 hull section that was lost during transport from Houston to Georgia.

Advanced Seismic has submitted the deposition testimony of Janus Rosborough, who testified under oath that the GEOTIGER 4 was owned by Advanced

Seismic. *See* Deposition of Janus Rosborough, Exh. 2 to Reply, p. 18. It is undisputed that the starboard hull section of the GEOTIGER 4 was lost at sea during transport in November 2015. As a result, Advanced Seismic has demonstrated standing to pursue the breach of contract claim relating to the loss of the hull section of its seismic vessel.

### B. MSA In Effect and Controlling

Advanced Seismic and Pentagon entered into the MSA on March 18, 2015. The MSA is interpreted and construed in accordance with Texas law. *See* MSA, ¶ 17.1. The MSA reflects an effective date of February 19, 2015, and it continued in effect for a period of two years. *See id.*, ¶ 4.1. As a result, the MSA had not expired on November 26, 2015, when the hull section of the seismic vessel was lost.

Pentagon argues that Clause 3.4 does not apply because the MSA was superseded by the Pentagon Booking Note, which states that the parties agree that it "shall prevail over any previous arrangements . . .." *See* Response, p. 12 (quoting Pentagon Booking Note, p. 1). Pentagon argues that "previous arrangements" includes the MSA. This argument fails for several reasons.

First, Pentagon relies on a dictionary definition of "arrangement" to support its argument that the Pentagon Booking Note superseded the MSA. Citing to the American Heritage Dictionary of the English Language, Pentagon argues that

"arrangement" means "an agreement or settlement, a disposition." *See* Response, p. 12. There is no suggestion in the record that the MSA was an "agreement or settlement" or "a disposition." None of the other definitions listed in the cited dictionary applies to the MSA.[2] As a result, Pentagon's reliance on the dictionary definition of "arrangement" is unpersuasive.[3]

Second, Pentagon's corporate representative, Leslie Watson, agreed during his deposition that the MSA "was in force, as the contract, at the time of this shipment in October, November and December of 2015" and "was a binding contract between [Plaintiffs and Pentagon] at the time the GEOTIGER 4 hull section was transported and also lost and damaged." *See* Deposition of Leslie Watson, Exh. 2 to Motion, pp. 102-103. Therefore, the argument that the Pentagon Booking Note superseded the MSA is refuted by the testimony of Pentagon's own corporate representative.

Third, the MSA, as its name implies and as the document reflects, is the Master Agreement governing services to be provided by Pentagon as a freight forwarder for different shipments throughout the term of the MSA. In the MSA, the parties state

---

[2] The entire entry in the American Heritage Dictionary lists six definitions for "arrangement." Pentagon does not argue that any of the other five apply.

[3] The MSA provides that the "Agreement attached as Addendum 3 will serve as the general terms and conditions in effect for the freight forwarding services provided by Pentagon. In the event that the terms of this Agreement are inconsistent with the terms of Addendum 3 the terms of this Agreement shall supersede." *See* MSA, ¶ 2.1.

that Pentagon will provide freight forwarding services "as provided in each applicable Shipper's Letter of Instructions." *See* MSA, p. 1. Section 2 of the MSA identifies the services that Pentagon will provide, including procuring the services of third parties to provide services that Pentagon cannot provide. *See* MSA, ¶ 2.3(d). Section 3 states that Pentagon will be asked from time to time "to determine its availability for the transportation of shipments from origin to destination." *See id.*, ¶ 3.1. The MSA, read in its entirety, is a Master Agreement pursuant to which each individual shipment by Pentagon as freight forwarder for Advanced Seismic will be addressed in a separate agreement setting forth the specific requirements for that shipment. There is no indication in the MSA that these individualized agreements, referred to in the MSA as Shipper's Letters of Instruction, SLIs, or SOPs,[4] were intended to supersede the MSA. Instead, the Shipper's Letters of Instruction were supplements to the umbrella MSA. The Pentagon Booking Note's reference to "previous arrangements" does not clearly apply to the MSA, and the Pentagon Booking Note does not contain a merger or integration clause. Therefore, Pentagon's argument that the Pentagon Booking Note superseded the MSA is refuted by the language of the two documents.

---

[4]    Under the MSA, Pentagon will be responsible for Advanced Seismic's freight forwarding services as provided in each applicable Shipper's Letter of Instructions ("SOP"). *See* MSA, p. 1. Section 3 of the MSA, however, is entitled "Shipper's Letter of Instruction (SLI)."

Based on the admissions by Pentagon's corporate representative, and the unambiguous language in the MSA and the Pentagon Booking Note, there is no genuine issue of material fact that Clause 3.4 of the MSA was in effect at the time starboard hull section of Advanced Seismic's GEOTIGER 4 was lost at sea.

C. **MSA Force Majeure Clause**

The MSA's Force Majeure clause states that "[n]either Party will be liable for delay in performance or failure to perform its obligations under the terms of this Agreement . . . if caused by an act, circumstance or event beyond the control of either of the Parties, including . . . storms." *See* MSA, ¶ 15.1. Pentagon argues that this provision relieves it of liability under Clause 3.4 because the GEOTIGER 4 hull section was lost at sea during a storm.

The Force Majeure clause, however, relieves a party of liability only for "delay in performance or failure to perform its obligations" under the MSA "if caused by [certain events, including] storms." *See* MSA, ¶ 15.1. Section 2 of the MSA identifies the parties' obligations regarding the services they are required to perform. For example, ¶ 2.2 relates to Advanced Seismic's obligation to pay for the services Pentagon provides, and ¶ 2.3 identifies Pentagon's service obligations under the MSA, including procuring the services of third parties and subcontractors to provide services that Pentagon cannot provide. Additionally, the first sentence of ¶ 3.4 requires

Pentagon to "use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment." *See* MSA, ¶ 3.4.

For purposes of the claim for liability under Clause 3.4 of the MSA, the only claim at issue in the pending Motion,[5] Plaintiffs do not rely on Pentagon's "delay in performance or failure to perform its obligations" under the MSA. Instead, Plaintiffs rely on Pentagon's warranty of "the services of a third party," and contractual assumption of liability for losses occurring "while a shipment is in the custody or control of a third party," set forth in the second and third sentences of Clause 3.4. These warranty and assumption of liability provisions at issue are not "obligations" that Pentagon failed to perform because of the storm. The warranty and assumption of liability provisions require only that Pentagon assume liability for loses occurring while the shipment is in the custody of a third party. There is no indication that Pentagon's failure to satisfy that requirement was caused by the storm. As a result, the Force Majeure clause does not relieve Pentagon from liability under the warranty and assumption of liability provisions in Clause 3.4.[6]

---

[5]  Plaintiffs in the pending motion seek summary judgment only under Clause 3.4. They specifically do not seek summary judgment at this time under any other theory of liability, such as negligence. *See* Motion, p. 1 n.1.

[6]  The effect of the Force Majeure clause on other theories of liability asserted against Pentagon is not before the Court in the pending Motion and, therefore, the Court does not address that issue.

Additionally, the Force Majeure clause of the MSA contains a notice requirement. The clause provides that any party affected by an event or condition of Force Majeure "shall give immediate notice thereof to the other Party." *See* MSA, ¶ 15.2. The uncontroverted evidence in the record establishes that Pentagon did not give immediate notice to Advance Seismic that its ability to comply with the warranty and assumption of liability provisions of Clause 3.4 was affected by an event or condition of Force Majeure.[7] On this basis also, Pentagon cannot rely on the Force Majeure clause to preclude liability under Clause 3.4 of the MSA.

### D. <u>Failure to Comply with Indemnification Requirements</u>

Pentagon argues that Advanced Seismic may have been at least partially negligent by inadequately securing the seismic equipment, including the lost hull section, to the flat racks that were loaded onto the M/V Fortitude. Therefore, Pentagon argues, *if* it is ultimately determined that Advanced Seismic was negligent, Plaintiff is not entitled to summary judgment on Clause 3.4 of the MSA because it failed to comply with Texas's "fair notice" requirements for indemnity agreements:

---

[7] In the insurance policy context, a showing of prejudice may be required to avoid coverage based on the insured's failure to comply with a notice provision in the policy, unless the notice provision "was an essential part of the bargained-for exchange because it was a specific provision negotiated by two sophisticated commercial parties." *See Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 703 (5th Cir. 2013). Both Pentagon and Advanced Seismic appear to be sophisticated commercial parties, and neither argues that Plaintiffs are required to demonstrate prejudice from Pentagon's failure to comply with the notice requirement in the Force Majeure clause.

(1) the express negligence doctrine and (2) the conspicuousness requirement.[8] *See* Response, p. 15 (citing *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987); *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990)). The "fair notice" requirements were developed to address "the injustice arising when a contracting party buries a provision substantially releasing itself from its own negligence in a way that is inconspicuous and does not provide fair notice to the other party."[9] *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997).

Advanced Seismic argues in response that Clause 3.4 of the MSA is not an indemnity provision subject to the fair notice requirements. The Texas Supreme Court has held that the fair notice requirements do not apply to contractual agreements that do not shift liability for third party claims from one party to the other. *See Solis*, 951 S.W.2d at 387 (holding that the agreement was "not an indemnity agreement because it does not shift Green's liability for third party claims to Solis").

---

[8] The express negligence doctrine requires that the intent to indemnify a party from the consequences of its own negligence "must be specifically stated in the four corners of the document." *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 595 (5th Cir. 2011) (quoting *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004)). "The conspicuous requirement mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972)).

[9] The Texas Supreme Court in *Solis* noted that the injustice which the "fair notice" requirements were designed to address was unlikely to be present in situations where both contracting parties are experienced and familiar with the industry. *See Solis*, 951 S.W.2d at 387.

In this case, Clause 3.4 does not shift risk from Advanced Seismic to Pentagon for third party claims alleging a loss caused by Advanced Seismic's negligence. That risk, and liability for those claims, is expressly assumed by Advanced Seismic in Clause 9.3 of the MSA,[10] which provides that Advanced Seismic shall be liable for third party claims caused by Advanced Seismic's negligence. *See* MSA, ¶ 9.3. In the second and third sentences of Clause 3.4, Pentagon warrants the services of third parties it selects, and agrees to be liable to Advanced Seismic for "loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party." *See* MSA, ¶ 3.4. This provision is not a contractual agreement that shifts to Pentagon liability *for third party claims* based on Advanced Seismic's negligence and, under *Solis*, the fair notice requirements do not apply.

Lastly, even if Clause 3.4 of the MSA were construed as an indemnity agreement to which the fair notice requirements would otherwise apply, the "fair notice requirements are not applicable when the indemnitor [Pentagon] possessed actual notice or knowledge of the indemnity agreement." *See Dresser*, 853 S.W.2d at 508 n.2.

---

[10]  The parties' agreement regarding indemnity is set forth in Section 9 of the MSA, entitled "Liabilities and Indemnity."

In conclusion, Clause 3.4 of the MSA is not an assumption of liability by Pentagon for third party claims based on Advanced Seismic's negligence. Therefore, Clause 3.4 is not subject to the fair notice requirements under Texas law.

## IV. ATTORNEYS' FEES PURSUANT TO TEXAS LAW

Plaintiffs seeks summary judgment that they are entitled to recover from Pentagon their attorneys' fees. Texas law allows the recovery of attorney's fees in breach of contract cases. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8). Specifically, attorney's fees for a successful claim for breach of an express warranty are recoverable under § 38.001. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex. 2008); *Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298, 304 (5th Cir. 2014). To recover attorney's fees under § 38.001, three requirements must be satisfied: "(1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." TEX. CIV. PRAC. & REM. CODE § 38.002.

In its Response, Pentagon asserts that Plaintiffs did not present their claim as required by § 38.002(2). Plaintiffs do not dispute or otherwise address this assertion in their Reply. Having failed to present evidence that they complied with the § 38.002

requirements for recovery of attorney's fees, Plaintiffs are not entitled to summary judgment at this time on their request for attorney's fees pursuant to § 38.001.

## V. CONCLUSION AND ORDER

In Clause 3.4 of the MSA, which was not superseded by the Pentagon Booking Note, Pentagon warranted the services of third parties it selected in connection with the shipment. Pentagon further agreed to be liable to Advanced Seismic for any loss occurring while the cargo was in the custody or control of its selected third party. The Force Majeure provision of the MSA does not relieve Pentagon of liability pursuant to Clause 3.4 of the MSA. Additionally, Pentagon failed to give timely notice of its reliance on the Force Majeure provision. Clause 3.4 is not a contractual agreement that, pursuant to the Texas Supreme Court's decision in *Solis*, is subject to the Texas "fair notice" requirements for certain indemnity agreements.

Plaintiffs are not entitled to summary judgment on their claim for attorneys' fees under Texas law because they have not established compliance with the procedural requirements of § 38.002 of the Texas statute. Therefore, for the reasons stated herein, it is hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [Doc. # 104] is **GRANTED** as to Advanced Seismic's request for summary judgment on Pentagon's liability under Clause 3.4 of the MSA. It is further

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [Doc. # 104] is **DENIED without prejudice** as to the claim for attorneys' fees under Texas law.

SIGNED at Houston, Texas, this **3rd** day of **July, 2018.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE